**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**April 1, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No.  03-30301

DAFYDD HOFFMAN, ET AL.,

Plaintiffs,

ANDREW MARIANO,

Plaintiff - Appellant,

v.

HALCOT SHIPPING CORP., ET AL.,

Defendants,

HALCOT SHIPPING CORP.; ZODIAC MARITIME AGENCIES, LTD.,

Defendants - Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana
00-CV-1815-T

Before DAVIS, BARKSDALE and PRADO, Circuit Judges.

PER CURIAM:[*]

The plaintiffs filed the instant suit seeking recovery for injuries sustained as a result of the negligent operation of an oceangoing tanker owned and managed by the defendants.  The district court found the defendants at fault but reduced plaintiff Mariano's award fifty percent due to the fault of the plaintiffs'

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-1-

employer, Port Ship Service, Inc. We conclude that the record does not support the district court's finding that Port Ship was at fault and the district court erred in reducing plaintiff Mariano's recovery. Plaintiff Mariano also challenges the district court's order refusing to allow plaintiff to recover his medical expenses that were previously paid under the employer's health plan. We find no error in the district court's conclusion that the subrogation exception to the collateral source rule is applicable in this case.

## I.

Plaintiffs, Dafydd Hoffman (Hoffman) and Andrew Mariano (Mariano), were employed as boat operators by Port Ship Service, Inc. (Port Ship). Port Ship is a water taxi service which transports goods and personnel to ships anchored in the Mississippi River in the New Orleans area. On the night of February 26, 1999, Hoffman and Mariano were on duty at Port Ship's facility in Arabi, Louisiana, and available to serve as operators of the Port Ship vessels if customers needed water taxi service. Also present was deckhand Jeremiah Arabie, who was filling in because the two deckhands scheduled to work that night failed to show up. Three boats were stationed at Port Ship's Arabi facility on the day of the accident, the LITTLE RAY, the MISS LESLIE, and the MISS RAE ANNE. When transporting passengers on one of its vessels, Port Ship requires that the vessel be manned by one operator and one deckhand; otherwise no deckhand is required.

At around 11:00 p.m. on the night in question, Hoffman and Mariano received a call from their dispatcher that the Defendants' 551 foot tanker was out of control up river and was careening down river directly toward Port Ship's vessels. Hoffman, Mariano, and Arabie acted quickly to move the vessels to safety. Hoffman boarded the LITTLE RAY, cranked the engine, and moved it forward to provide the necessary slack in the mooring line to allow Arabie to untie the vessel. At the same time, Mariano headed for the MISS LESLIE. Because no other deckhand was available, Mariano attempted to untie the MISS LESLIE by himself. The strong river currents prevented him from doing so, and in the process Mariano sustained injuries to his neck and shoulder.[2]

The plaintiffs filed suit in the Louisiana state court against Halcot Shipping Service, Inc. (Halcot) and Zodiac Maritime Agencies, Ltd., seeking damages for their injuries. Port Ship was not a party to the litigation. The case was then removed to federal court. After a bench trial, the district court found the defendants liable for the injuries suffered by Mariano. The district court also found Port Ship negligent for failing to have two deckhands on duty the night of the accident and concluded that Port Ship was 50% at fault for Mariano's injuries. Pursuant to this finding, the district court reduced Mariano's recovery by 50%. The district court also concluded that Mariano could not recover

---

[2] Plaintiff Hoffman was also injured when the drifting tanker slammed into the LITTLE RAY. Hoffman is not a party to this appeal.

any medical expenses that had already been paid by Port Ship's medical insurer, Gilsbar, Inc. (Gilsbar). The district court reasoned that under Port Ship's insurance plan Gilsbar had the right of subrogation to recover payments made by it and was therefore the proper party plaintiff to recover those expenses from the defendants.

## II.

Mariano first argues that the district court erred in reducing his award by 50% due to the negligence of Port Ship. Because no deliveries were scheduled that night, Mariano argues that Port Ship had no duty to have a deckhand available for each vessel at the facility so that all three vessels could service customers at one time. Mariano argues that Port Ship has no duty to have a boat operator and a deckhand on duty for each vessel located at its facility just in case a tanker loses control in the river and puts its docks and standby vessels in danger.

In denying Mariano's Motion to Amend the Judgment, the district court stated that "it cannot be ignored that the circumstances surrounding the accident on the night in question revolve in large portion on the fact that Port Ship was understaffed." Although true, this fact goes to causation. It does not answer the question of whether Port Ship had a duty to keep two deckhands at the Arabi station at all times.

The defendants did not offer any evidence showing that it is Port Ship's or industry policy to have two deckhands on duty at all

times.  Indeed, the trial testimony shows that the only time a deckhand's presence was required was to man a vessel transporting passengers.  It is true that if Port Ship had received simultaneous orders for two vessels to transport passengers it may have been able to fill only one of those orders, but we are aware of no duty owed by a vessel owner to maintain a standby crew for all its available vessels.  The district court erred in holding Port Ship had a duty to maintain two deckhands at the Arabi facility at all times.[3]

### III.

Mariano next argues that the district court erred in applying the subrogation exception to the collateral source rule and preventing him from recovering from Halcot any medical expenses already paid by Port Ship's insurer, Gilsbar.  Under the "collateral source" rule a plaintiff's tort recovery will not be reduced by the amount of any benefits received by the plaintiff from sources independent of the tortfeasor. *Kidder v. Boudreaux*, 636 So.2d 282, 284 (La.App. 3d Cir. 1994).  However, an exception is provided to this rule where an insurer has the right to subrogate against the tortfeasor who injured the plaintiff.  This exception applies even if the party subrogated does not appear to

---

[3] Although Mariano does not argue the issue on appeal, our opinion should not be read as suggesting that Halcot would have been entitled to a reduction in the amount owed to the plaintiff if the evidence supported a finding that Port Ship was at fault.  Liability under the general maritime law is joint and several. *Coats v. Penrod*, 31 F.3d 1113 (5th Cir. 1995).

assert its subrogation rights and the defendants do not timely object to the non-joinder of a necessary party. *Id*.

At trial, the Mariano did not make an evidentiary objection to the admission of the plan summary (except possibly to its relevance), nor does he make such an argument in this appeal.[4] Rather, Mariano argues that this case is identical to *Kidder*, 636 So.2d at 284. Mariano contends that under *Kidder*, the right to subrogation may only be established by introducing into evidence the actual insurance policy or plan. *Id*. Mariano argues that the only evidence of a right to subrogation offered by the defendants was the Summary of the Gilsbar Employee Benefit Plan of Port Ship (the "Plan") and not the Plan itself.

We reject the plaintiff's characterization of *Kidder*. *Kidder* refused to apply the subrogation exception to the collateral source rule because the defendants in that case introduced no evidence regarding the right of subrogation. *Id*. Unlike *Kidder*, the defendants in the instant case did introduce evidence of Gilsbar's right to subrogation through introduction of the Gilsbar Plan Summary. This uncontradicted Plan Summary adequately demonstrates

---

[4] Although plaintiff made a general objection to the introduction of the plan summary, his reference back to an earlier objection makes it clear he was challenging evidence of Port Ship's payment of plaintiff's medical bills as irrelevant in light of the collateral source rule.

Gilsbar's right to subrogation.[5]  The subrogation exception to the collateral source rule is therefore applicable to this case, and the district court was correct in refusing to allow the plaintiff to recover from Halcot medical expenses paid by Gilsbar.  *Guillory v. Terra International, Inc.*, 316 So. 2d 1084, 1093 (La.App. 3 Cir. 1993).

IV.

---

[5] The "Subrogation" section states, in pertinent part:

If a participant receives benefits under this Plan as a result of an illness or injury caused by another party, this Plan has the right to seek repayment of those benefits from the party that caused the illness or injury or from the participant.  <u>This means that the Plan is "subrogated."</u> <u>This right exists automatically, without additional notice and without obtaining consent of any person.  This right may be asserted against any party who may be liable for the illness or injury, including, but not limited to, a participant's insurance company, or nay uninsured motorist or automobile insurance coverage maintained by the participant.  By participating in this Plan or accepting the benefits of coverage hereunder, a participant is deemed to have consented and agreed to this right of subrogation and granted a lien or privilege in favor of the Plan Administrator with respect to any funds received in connection with any illness or injury subject to subrogation and to have agreed to reimburse the Plan Administrator for all benefits paid on account of the illness or injury.</u>

* * *

The Plan will be subrogated to all rights of recovery of the participant against any source to the extent of any benefits paid by this Plan with respect to such expense, and the injured participant shall not do anything to prejudice such rights of the Plan.  The participant shall execute and deliver any instruments and papers, and take any such actions, necessary to secure such rights to the Plan; however, failure to obtain any such written assignment shall not affect the right of the Plan to recover benefits paid.

Gilsbar Plan Summary, R. at 528-29 (No. 00-1815) (emphasis added).

-7-

For the above reasons, we agree with the district court's holding that the subrogation exception to the collateral source rule is applicable to this case. We conclude, however, that the district court erred in reducing Mariano's recovery because of Port Ship's alleged fault. We, therefore, VACATE the district court's judgment and REMAND for entry of judgment consistent with this opinion.

AFFIRMED in part, VACATED in part, and REMANDED.